IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**TALAT NAZIR, M.D.,**                                                     **PLAINTIFF**

**v.**

**BAYLOR COLLEGE OF MEDICINE,**
**JOHN DOES 1 – 25**                                         **DEFENDANTS**

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff Talat Nazir, M.D., and files this Original Complaint against Defendant Baylor College of Medicine Healthcare and John Does 1-25, and respectfully demands a jury trial, and for his cause of action respectfully states to the Court the following:

## PARTIES

1. Plaintiff, Talat Nazir, M.D. is currently a resident of the state of Illinois.

2. Defendant, Baylor College of Medicine (hereafter referred to as "Baylor") is a Texas Corporation that may be served through its registered agent James Banfield, One Baylor Plaza, Suite 106A, Houston, Texas 77030, or wherever he may be found.

3. On information and belief, the defendants, designated herein as John Does 1 through 25, are certain unknown and unnamed persons and/or entities who may be liable for the claims asserted herein including, but not limited to, the agents, servants, employees, representatives, affiliates, parents, subsidiaries, joint-tortfeasors, tortfeasors, contractors, co-conspirators, joint adventurers, partners, stockholders, and/or other entities related to any of the named defendants and/or any and all other person who may be liable to the plaintiff for the claims asserted herein.

## VENUE AND JURISDICTION

4. The Court has federal question jurisdiction under 28 U.S.C. § 1331, and civil rights jurisdiction under 28 U.S.C. § 1343 and the Civil Rights Act of 1964, including, but not limited to 42 U.S.C. § 1981, *et seq.*, for Plaintiffs claims. This Court has supplemental jurisdiction over Plaintiff's state law claims.

## FACTUAL BACKGROUND

5. Plaintiff's EEOC Charge of Discrimination, including exhibits and supplements, is attached hereto as Exhibit "A," and his Right to Sue letter, received July 31, 2010, is attached hereto as Exhibit "B". All factual allegations in Exhibit "A" are incorporated herein by reference as if stated herein verbatim.

6. In 2008, in order to gain additional gastrointestinal pathology clinical training at the fellowship level with the goal of attaining proficiency and certificate of completion in Gastrointestinal Pathology, Plaintiff Talat Nazir, M.D. applied and was accepted to the Baylor College of Medicine's Department of Pathology.

7. Dr. Nazir accepted a drastically reduced salary in exchange for this promised additional gastrointestinal pathology clinical training with the reasonable goal of increasing his employment value once the fellowship was completed successfully. Dr. Nazir entered an agreement with Baylor College of Medicine in 2008. See Exhibit "C".

8. Upon the July 1, 2008 fellowship effective date, Dr. Nazir was assigned to train under Dr. Mamoun Younes, Professor of Pathology and Medicine at Baylor. Prior to and after the execution of the fellowship agreement, Dr. Nazir was promised both in writing and verbally that he would receive patient care training. In reliance on the

promise by Baylor to give him clinical training, Dr. Nazir turned down other programs to which he had applied.

9. In the first week, Dr. Younes told Dr. Nazir that he would be given clinical cases to work based the fact that Dr. Nazir already had a permanent Texas medical license. However, Dr. Nazir did not receive any cases. It was also during this time that Dr. Nazir was introduced to Dr. Younes' lab technician, Valentine Montoya, who told him that she would be leaving at the end of the month and that Dr. Nazir would be the only one left.

10. Soon after commencement of performance under the contract, Dr. Nazir began noticing that he was being assigned lab technician research assignments without any explanation as to why or adequate feedback for the work he was doing.

11. Dr. Nazir began to notice that he was not receiving the clinical training he was promised. Rather, he was doing a lab research technician's job duties. Dr. Nazir was to receive quarterly feedback on his performance, and Dr. Younes failed to adequately do this. This was due in large part to the fact that Dr. Younes used Dr. Nazir as his replacement research technician after the loss of Dr. Younes' former technician.

12. As a result of not getting the training he was promised by Baylor, Dr. Nazir followed Baylor's grievance procedure stated in the fellowship Agreement and filed a grievance against Dr. Younes for the absence of education and training previously promised to him.

13. The grievance angered Dr. Younes and other employees of Baylor based on the fact that it brought to light and ultimately revealed the unethical and unprofessional acts of Baylor employees. As the first act of retaliation by Baylor in

breach of its Agreement with Dr. Nazir for bringing his grievance against Dr. Younes, the college failed and refused to resolve his grievance for three months. During this time, Baylor refused to provide any patient care training or teaching in gastrointestinal pathology. On or about March 12, 2009, Dr. Nazir met with Dr. Francis H. Gannon, an employee at Baylor, who told Dr. Nazir that his grievance against Dr. Younes had been decided and that Dr. Younes would remain his program director.

14. On the same day, Dr. Nazir wrote a letter to the Assistant Dean for Graduate Medical Education seeking yet another transfer to another gastrointestinal pathology program. Again, Dr. Nazir simply was requesting patient care education and training in gastrointestinal pathology as promised by Baylor.

15. In an overt act of further retaliation and bad faith by Baylor, Dr. Nazir received a phone call from John Roberson, who worked as Director of Security at the Baylor facility, telling Dr. Nazir to no longer come to the Baylor graduate medical education area.

16. On or about March 25, 2009, Dr. Nazir was further retaliated against when Baylor caused him to receive a document titled "Criminal Trespass Warning."

17. Baylor again harassed and intimidated Dr. Nazir on or about March 27, 2009, when he was notified that he needed to vacate his apartment by March 31, 2009, as a result of him no longer being affiliated with the Baylor College of Medicine. Baylor caused this notice to be sent to Dr. Nazir.

18. On March 30, 2009, Dr. Nazir received a letter stating that he should disregard the March 27, 2009 eviction notice because Baylor had misinformed the housing director about the status of Dr. Nazir's employment with Baylor. Upon

information and belief, Baylor changed their position in an attempt to cover up the extreme and outrageous acts of retaliation and bad faith in its contractual relations with Dr. Nazir.   Baylor's acts constitute ridiculous, harassing and intimidating tactics against Dr. Nazir.

19. As the final act intended to humiliate Dr. Nazir, Dr. Gannon, in a letter received April 1, 2009, states that several people at Baylor, including himself, have become "concerned for their safety".  Further, the letter goes on to state that "Security had restricted your movements and will further restrict them" and that Baylor College of Medicine is terminating the fellowship.  However, Dr. Gannon never provided any basis for his claims for himself and/or others at Baylor College of Medicine being concerned for their safety as a result of Dr. Nazir's behavior.

20. This publication of the slanderous defamatory statements were without legal justification or excuse and were not privileged because Defendant Baylor published the defamatory statements with knowledge that they were false or with substantial grounds for knowing that they might be false and with reckless disregard as to whether they were true or false.

21. Dr. Nazir's dismissal was unwarranted and as a result of the wrongful discrimination against Dr. Nazir on the basis of his race, national origin (Pakistan) and religion (Muslim) in addition to the retaliatory action taken against him after he filed a grievance against Dr. Mamoun Younes and Baylor College of Medicine.

22. The letter from Dr. Gannon was the first notice to Dr. Nazir that his fellowship had been terminated, so he met with an attorney to file a formal appeal of the termination of his fellowship which was sent via certified mail on April 6, 2009.

23. In a letter which was postmarked April 6, 2009 (however, dated April 3, 2009), Baylor College of Medicine decided that there would be no appeal of Dr. Nazir's dismissal to the GME Committee.

24. As a result of Baylor's overt discrimination, on April 7, 2009, Dr. Nazir filed a charge with the Equal Employment Opportunity Commission. Baylor was aware Dr. Nazir intended to file this charge.

25. On April 29, 2009, Dr. Nazir's attorney received written notice that Baylor had retained an attorney.

26. On May 4, 2009, Dr. Nazir's counsel spoke with Baylor's counsel and notified Baylor that Dr. Nazir filed the EEOC complaint.

27. On May 14, 2009, Dr. Nazir was sent a notice that the Texas Medical Board had received a complaint against him regarding termination of his fellowship.

28. On May 20, 2009, Dr. Nazir's counsel spoke with an employee of the Texas Medical Board who stated their office received the complaint from Baylor on May 12, 2009.

29. Upon information and belief, Baylor College of Medicine filed a complaint with the Texas Medical Board in direct retaliation for Dr. Nazir intending to file and actually filing a complaint with the EEOC. This contention is based in part on the fact that Baylor did not file a complaint with the Texas Medical Board against him until after they were notified Dr. Nazir intended to file or in fact filed an EEOC complaint.

30. Thereafter, the Texas Medical Board found Baylor's complaint to be unfounded. Baylor improperly terminated Dr. Nazir in direct violation and breach of

their own Agreement with Dr. Nazir and thereafter retaliated against Dr. Nazir because he filed an EEOC complaint.

31. As a direct result of Baylor's wrongful acts, Dr. Nazir was forced to file for unemployment on April 19, 2009. The Texas workforce commission made a decision that Baylor discharged Dr. Nazir for a reason other than misconduct connected with work.

32. On or about November 6, 2009, the Texas Medical Board found that there was no evidence to support the basis for Dr. Nazir's termination from the Baylor College of Medicine fellowship program. Baylor's retaliatory, defamatory, harassing and discriminatory complaint against Dr. Nazir was rightfully dismissed.

33. However, this dismissal came well after numerous attempts on the part of Dr. Nazir to find a position in the field of medicine. His attempts had failed because of this huge black cloud hovering over his record during this time and because of Baylor's failure and refusal to provide truthful information to potential employers or state medical board inquiries about Dr. Nazir. Dr. Nazir had become reasonably worried during the pendency of the Texas Medical Board complaint process of the consequences of too many medical institutions learning of this embarrassing, wrongful and meritless pending charge against him. Dr. Nazir lost precious time, experience, practice and money during this painful time awaiting the Texas Medical Board's decision. Dr. Nazir's resume is now left with the indelible mark of nearly a year without much to show except for his fight against the unfair and outrageous acts of Baylor.

34. Based on Baylor College of Medicine's actions against Dr. Nazir in breaching their contract with Dr. Nazir, in addition to Baylor's acts of discrimination and

retaliation against him, the complaint lodged against Dr. Nazir from Baylor College of Medicine and/or their agents, employees or representatives, is baseless, retaliatory in nature and amounts to mere harassment, discrimination and defamation against Dr. Nazir.

## CAUSES OF ACTION

35. Plaintiff incorporates all preceding paragraphs herein for all purposes.

36. **Discrimination and Retaliatory Discharge**. Defendants retaliated, including adverse employment decisions and termination, against Dr. Nazir in violation of the Civil Rights Act of 1964 because he threatened to file and actually filed an EEOC charge of discrimination against Defendants.

37. Defendants have engaged in unlawful employment practices at its facilities in Texas in violation of Title VII of the Civil Rights Act of 1964. Dr. Nazir, a member of a protected racial group, was discriminated against based on his race, national origin and religion.

38. The effect of the practices complained of herein has been to deprive Dr. Nazir and others similarly situated of the ability to practice his chosen profession, and has denied him of equal employment opportunities and otherwise adversely affected his ability to practice medicine because of his race, religion and/or national origin.

39. Defendants made adverse employment decisions, including termination, against Plaintiff in violation of the Civil Rights Act of 1964 because of his race, national origin and/or religion and in violation of Texas public policy.

40. The unlawful employment practices complained of herein were, and are, intentional. The unlawful employment practices complained of herein were done by

Baylor with malice or with reckless indifference to the federally protected rights of Dr. Nazir.

41.     **Vicarious Liability/Agency/Scope.**  Baylor is liable for the acts of its agents under the doctrines of respondent superior, agency, vicarious liability, ratification, waiver, estoppel, course and scope of employment, and vice-principal liability.  In all circumstances, the acts or omissions complained of were committed or omitted in the course and scope of the actor's employment with Baylor and caused damages to Dr. Nazir.

42.     **Breach of Contract.**  Defendants have failed and defaulted in the performance of the terms, conditions, and stipulations of the written and verbal contracts described above.  All conditions precedent to the Defendants' obligations under the terms of the contracts had occurred and the Defendants' obligations were due and owing at the time of the defaults and remain due and owing.

43.     Dr. Nazir was damaged, and continues to be damaged, as the direct, foreseeable, and proximate result of the Defendants' breach of contract.

44.     **Good Faith and Fair Dealing.**  Dr. Nazir and the Defendants had a special relationship.  The Defendants exercised excessive control Dr. Nazir's fellowship, medical career and training.  The Defendants had a hidden agenda and engaged in trickery, artifice, and guile to utilize Dr. Nazir as a technician and deprive him of the training for which he contracted.

45.     The Defendants expressly agreed to act in good faith and to deal fairly with Dr. Nazir.

46.     The Defendants were required to act in good faith and deal fairly in their conduct towards Dr. Nazir.  The Defendants breached this covenant.

47.     As the proximate and foreseeable result of the Defendants' breach of this covenant, Dr. Nazir has suffered, and continues to suffer, damages.

48.     **Negligent Hiring, Training, Retention and Supervision.**  At all times material to this cause of action, Defendants had a duty to Dr. Nazir to use ordinary care to hire, train, retain and supervise its employees.  At the time and on the occasion in question, and immediately prior thereto, Defendants were guilty of negligence in hiring, training, retaining, and/or supervising its employees, and knew, or in the exercise of reasonable care should have known, its employees were committing the acts complained of herein.  Defendants were negligent in reasonably and adequately training and supervising its employees in the proper policies, procedures, and manner by which to conduct its residency program and interact with employees that they supervised.  Defendants did not enforce their policies and failed to ensure that their employees complied with the policies and procedures in place at Baylor.  The breach of these duties caused Dr. Nazir to sustain damages.

49.     Additionally, and alternatively, Defendant was negligent in retaining certain employees after being on reasonable notice that those employees engaged in the tortious activities complained of herein, resulting in further damage to Dr. Nazir.

50.     The acts and omissions of Defendants allowed an environment of discrimination and retaliatory conduct to exist at Baylor causing damage to Dr. Nazir.  Defendants knew or should have known of the environment that existed.

51.     **Infliction of Emotional Distress.**  Defendants' conduct generally described above was extreme and outrageous and utterly intolerable in a civilized society. Defendants negligently, recklessly, and/or intentionally, inflicted emotional distress on Plaintiff, who experienced severe emotional distress.  Defendants are liable to Plaintiff for actual damages, and punitive damages arising out of this claim.

52.     **Slander/Libel.**  Defendants' indefensible, inexplicable behavior and oral statements both during and after Dr. Nazir's fellowship included lies, conduct and innuendo about Plaintiff that were false, and made maliciously because the Defendants knew the statements were false, or were reckless with regard to their falsity.  Defendants publicized their communications, and impugned Plaintiff's personal and professional reputation, making the statements slanderous *per se*.  Defendants' slanderous statements were made maliciously.  Plaintiff requests nominal, actual and punitive damages on this claim.

53.     Defendants are liable to Dr. Nazir for their libel and defamation of Plaintiff's reputation.  Dr. Nazir hereby sues for damages, past, present and future, to his reputation, and for his humiliation, embarrassment and extreme mental anguish.  Plaintiff requests exemplary damages for this libel.

54.     Defendants' actions further constitute the tort of libel *per se*.  Defendants' statements exposed Dr. Nazir to public hatred, contempt, ridicule or financial injury and impeached his honesty, integrity, and reputation.  In addition, Defendants' statements imply Dr. Nazir committed a crime punishable by imprisonment.  Dr. Nazir hereby requests for his damages, past, present and future, to his reputation, and for his

humiliation, embarrassment and extreme mental anguish as well as exemplary damages for this libel.

55. **Civil Conspiracy.** Defendants intentionally and unlawfully conspired with others to deprive Dr. Nazir of employment/residency and to wrongfully terminate and retaliate against him. Defendants' acts constitute civil conspiracy against Dr. Nazir

56. As a direct and proximate result of Defendants' actions, Dr. Nazir has suffered and continues to suffer damages.

57. **Tortious Interference with Business Relations/Prospective Business Relations.** Defendants have negligently and/or intentionally and maliciously interfered with the business relations and prospective business relations between Dr. Nazir and others, including future employers in Dr. Nazir's chosen professional field.

58. Dr. Nazir had developed good relations and had opportunities to enter business relations with others in the medical field. Dr. Nazir had developed a reputation for honesty, industry, capability, stability and trustworthiness. Defendants knew of the relations, existing and prospective, between Dr. Nazir and these persons and/or entities at the time of the interference. The actions committed by the Defendants have prevented Dr. Nazir from contracting with others and damaged his ability to work in his chosen profession. Dr. Nazir lost business relationships and potential business relationships as a result of Defendants' acts.

59. As a proximate result of the acts of the Defendants, Dr. Nazir has suffered foreseeable damages in the past, and in the future, including, but not limited to, loss or reputation, shame, embarrassment, humiliation, mental pain and anguish; loss of wages in the past, and wage earning capacity in the future; direct economic harm and special

damages; and interference with the relationship between Dr. Nazir and others, including future employers in his chosen profession.

60. **Conspiracy to Tortiously Interfere with Business Relations/Prospective Business Relations.** Defendants conspired to negligently and/or intentionally and maliciously interfere with the prospective and existing business relations between Dr. Nazir and others, including future employers in his chosen profession. Dr. Nazir had developed good relations with others in the medical field and had developed a reputation for honesty, industry, capability, stability and trustworthiness. Defendants knew of the relations, existing and prospective, between Plaintiff and these persons and/or entities at the time of the interference. The actions committed by the Defendants have prevented Dr. Nazir from contracting with others and damaged his ability to continue work in this chosen profession. Dr. Nazir lost business relationships and potential business relationships as a result of Defendants' acts.

61. As a proximate result of this conspiracy, Plaintiff has suffered foreseeable damages in the past, and in all reasonable probability in the future, including, but not limited to, loss of reputation, shame, embarrassment, humiliation, mental pain and anguish; loss of wages in the past, and wage earning capacity in the future; direct economic harm and special damages; loss of wages in the past and in all reasonable probability loss of wage earning capacity in the future, and interference with the relationship between Plaintiff and others, including future employers in Plaintiff's chosen profession.

## DAMAGES

62. Dr. Nazir sues for actual damages proximately caused or otherwise produced by Defendants' conduct, which damages include, but are not necessarily limited to the following: past and future pain and suffering, mental anguish, medical costs, shame, fear, humiliation, depression, embarrassment, anxiety, severe stress, damage to personal and professional reputation, loss of enjoyment of life, inconvenience, and other personal harms.  Plaintiff also sues for past and future lost wages, and lost earning or employment capacity, attorneys' fees and costs of litigation.  Because the statements made were defamatory per se, Dr. Nazir is entitled to a presumption of general damages.

## PUNITIVE DAMAGES

63. Defendants acted with malice toward Dr. Nazir, with a specific intent to cause substantial injury (physically, emotionally and to Dr. Nazir's reputation). Defendants further engaged in acts or omissions that involved a high degree of risk of harm to Dr. Nazir, where Defendants had actual subjective awareness of those risks, but proceeded with conscious, reckless or gross indifference to the rights, safety and welfare of Dr. Nazir.  Dr. Nazir requests the maximum amount of punitive damages possible from a jury in light of all relevant factors considered in determining such an award.

WHEREFORE PREMISES CONSIDERED, Dr. Nazir prays that Defendants be cited to appear and make answer herein and that a duly impaneled jury hear the case. Upon proper verdict, Dr. Nazir requests to be awarded and Defendants ordered to pay, jointly and severally:

   a.   costs of court;

   b.   attorney's fees;

      c.      pre-judgment and post judgment interest;

      d.      actual damages as alleged herein and otherwise; and

      e.      punitive damages.

Dr. Nazir further prays for all such other relief to which Plaintiff may show to be justly entitled.

                Respectfully submitted,

                /s/ Michael A. Heilman
                Michael A. Heilman

OF COUNSEL:

Michael A. Heilman (TX Bar No. 09380924)
HEILMAN LAW GROUP, P.A.
111 East Capitol Street, Suite 250
Jackson, Mississippi 39201
Post Office Drawer 24417
Jackson, Mississippi 39225-4417
Telephone:    (601) 914-1025
Facsimile:    (601) 960-4200